JOHN E. McLAIN *vs*. HARRY S. WILLEY.

1. LANDLORD AND TENANT—LAND—DISTRESS—RIGHT TO DISTRAIN—
"PROPERTY."

A landlord has no right to distrain for rent, where he has let land with the agreement that muskrats, which the tenant may take upon the property,

are to be divided; for these animals are not "property", within the meaning of the law, out of which rent arises.

2. Lᴀɴᴅʟᴏʀᴅ ᴀɴᴅ Tᴇɴᴀɴᴛ—Rᴇɴᴛ—Pᴀʏᴍᴇɴᴛ ɪɴ Cʀᴏᴘs—Rᴇᴀsᴏɴᴀʙʟᴇ Tɪᴍᴇ.

Where rent is payable in crops, it is the duty of the tenant to properly harvest his crops and deliver the landlord's share within a reasonable time.

3. Lᴀɴᴅʟᴏʀᴅ ᴀɴᴅ Tᴇɴᴀɴᴛ—Rᴇɴᴛ—Pᴀʏᴍᴇɴᴛ ɪɴ Cʀᴏᴘs—Dᴜᴛʏ ᴛᴏ Cᴀʀᴇ ғᴏʀ.

Where rent is payable in crops, it is the duty of the tenant, until delivery of the rent, to care for the landlord's share and keep it in such a place that by the exercise of reasonable care it will remain safe.

4. Lᴀɴᴅʟᴏʀᴅ ᴀɴᴅ Tᴇɴᴀɴᴛ—Rᴇɴᴛ—Cʀᴏᴘ Rᴇɴᴛ—Fᴀɪʟᴜʀᴇ ᴛᴏ Cᴜʟᴛɪᴠᴀᴛᴇ.

In an action of replevin for goods taken by way of distress, a landlord cannot recover against the defendant, his tenant, where the lands are demised upon terms of crop rent, for any failure to properly cultivate.

(*December* 13, 1910.)

Pᴇɴɴᴇᴡɪʟʟ, C. J., and Bᴏʏᴄᴇ, J., sitting.

*Martin B. Burris* for plaintiff.

*James W. Lattomus* for defendant.

Superior Court, New Castle County, November Term, 1910. Aᴄᴛɪᴏɴ ᴏғ Rᴇᴘʟᴇᴠɪɴ (No. 7, May Term, 1909).

This action of replevin was brought by the plaintiff who was tenant of certain farm lands and marsh, in this county, against the defendant, bailiff of the landlord, who had caused a distress to be made of certain personal property of the plaintiff for rent in arrear for the years 1907 and 1908.

The plaintiff (tenant) replevied the property distrained upon, and upon giving bond retained it.

The main question tried was, what amount of rent, if any, there was, in arrear, due and owing the landlord when the distress was made, and the burden being upon the defendant, he had the opening and closing. The facts involved in the case appear in the opinion.

(See also same case for demurrers to defendant's cognizance, on the ground of insufficiency, 1 *Boyce* 245, and 359.)

Aʀɢᴜᴍᴇɴᴛ ᴏғ Cᴏᴜɴsᴇʟ ғᴏʀ ᴛʜᴇ Pʟᴀɪɴᴛɪғғ.

It is contended that the rental was to be one-half of the crops raised thereon; in addition to which the tenant was required

Argument.

to yield to the landlord one-half of the pelts of the muskrats caught on that part of Blackbird Creek skirting the farm and lying between high and low water.

To justify the taking, the defendant must prove a demise for a rent certain, or which may be reduced to a certainty; that the rent issued out of the land in question, and was in arrear at the time of the distress.

In other words, he must show that the landlord had the right of distress at the time it was made. ·

Unless a share of the pelts of these animals, taken *ferae naturae*, be a part of a single rent, issuing out of this farm, a distress will not lie.

Whatever enjoyment or benefits there may accrue to the riparian owner, out of the land lying between high and low water, by hunting and fishing, his exercise of them is not exclusive, but largely in common with the public, and subject to possible extinction by the power of the legislature. The rights of the riparian owner are incorporeal and merely appurtenant to the land, and the grant of their use is a mere license, for which a distress does not lie. *Hancock v. Austin*, 108 *Eng. Com. Law* 634; *Winslow v. Henry*, 5 *Hill N. Y.* 482; *Woodfall on Landlord and Tenant, Vol.* 1, pp. 376-413.

The farm, which is the subject of the demise involved in the cause at bar, was let for a share of the crops, terms identical with those throughout the state in renting agricultural holdings, and did not cover an alleged share of pelts taken from animals *farae naturae* with the right of distress.

### Argument of Counsel for the Defendant.

Where land is rented for cultivation upon an agreement to pay a certain share of the crops, the tenant must cultivate it with proper industry, and the landlord is entitled to demand for rent such portion of the crop raised as his share would have amounted to if proper industry had been displayed in cultivating the crop. 24 *Cyc.* 1467; *Clark v. Banks*, 6 *Houst.* 584 (594).

The plaintiff was, by the terms of the contract, to pay one-half part of the crops raised on the premises and to trap the marsh

and pay one-half of the muskrat pelts as rent.   It was his duty to gather the said crops and to pay his landlord her share in a reasonable time after maturity, and also to trap the marsh and to pay his landlord one-half of the muskrat pelts within a reasonable time after the pelts were cured.

If the plaintiff failed to gather any part of the crops which were raised on the said farm during his tenancy, or through negligence permitted them to be wasted or lost, or converted them to his own use, he is nevertheless bound to pay his landlord her share the same as if said crops had been gathered and accounted for.

The defendant will be entitled to a verdict if it appear that any part of the rent is in arrear.   2 *Saunders Pl. and Ev.* 768.

PENNEWILL, C. J., charging the jury:

Gentlemen of the jury:—This is an action of replevin brought by John E. McLain against Harry S. Willey to recover certain personal property which was seized and taken by Willey as bailiff, under a distress warrant, to satisfy the claim of McLain's landlord for rent in arrear.

While the action is one of replevin, in which the tenant is plaintiff, and the bailiff defendant, it will be less confusing to you, perhaps, if you will regard the suit as an action by the landlord Jennie E. Cornelius against John E. McLain her tenant, for the recovery of rent which she claims was due from McLain at the time of the distress.   In effect such is the present action, and the case you are to decide.

It is not disputed that in the early part of the year 1907 Jennie E. Cornelius (then Jennie E. Bell), rented to John E. McLain a certain farm which McLain occupied as tenant for two years.   And it is not disputed that under the terms of the demise the tenant was to pay his landlord one-half of all the grain and fruit crops raised on the farm.   The landlord claims that the tenant was to pay her also one-half of the pelts or skins of all muskrats caught or taken on the marsh lands which constituted a part of the farm demised, as well as one-half of the meat if she furnished traps, which she claims to have done.   The tenant denies that there

Charge.

was any such agreement, and insists that it was agreed between him and his landlord that he should have for himself all the muskrats he could get from the marsh.

Under the facts in this case, and the law applicable thereto, you cannot allow the landlord anything for the pelts or meat of muskrats that the tenant may have caught or taken during his tenancy. You may, therefore, eliminate and dismiss from this case any claim of the landlord based thereon. We do not say that a landlord, or landowner, might not make such a contract or agreement with a tenant or other person as the landlord in this case claims was made, and by a proper action enforce such agreement, but we do not think that muskrats are property, within the meaning of the law, out of which rent can be recovered, or for which a distress will lie.

In regard to the crop of oats in dispute, the tenant contends that a part of them were damaged by rain falling upon them from a window, the glass in which had been broken out, and that such oats were consequently of inferior quality, and of little if any value. We say to you upon this point that it is the duty of a tenant on shares to deliver the landlord's share of the crops in a reasonable time after their maturity, no matter whether they are in good or inferior condition. And it is also his duty to properly harvest his crops, and until the delivery of the landlord's share to keep such share in a safe place, and in good condition, so far as he can do so by the exercise of due and reasonable diligence and care.

The important question in this case for you to determine, gentlemen, is: Did the tenant pay or deliver to his landlord the one-half part of all the grain and fruit raised and grown on the demised farm during the years 1907 and 1908?

We may say to you that in determining whether there is anything due and owing from the tenant to the landlord in this case, there are two things to be considered: (1) What did the tenant in fact raise or grow on the farm? (2) Did he pay or deliver to his landlord one-half of all that he did raise or grow, according to the terms of his agreement? There can be no recovery in this action for any failure on the part of the tenant to cultivate and manage the farm in a good and proper manner. If

Charge—Verdict.

you believe from the evidence that there was, at the time of the distress, any rent in arrear, from any crop, due and owing to the landlord from her tenant, your verdict should be in favor of the defendant in the replevin for such amount as you are satisfied was the fair value in money of the share of any crop or crops not paid or delivered.

If you believe the tenant had paid his landlord all the rent to which she was entitled, your verdict should be in favor of the plaintiff in the replevin.

Verdict for plaintiff for six cents.